UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT MCBRIDE,

                    Plaintiff,

          v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

                    Defendant.

Case No. C16-601 RSM

**ORDER ON SOCIAL SECURITY
DISABILITY**

## I.      INTRODUCTION

Plaintiff, Robert McBride, brings this action pursuant to 42 U.S.C. §§ 405(g), and

1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security

denying his applications for Disability Insurance Benefits (DIB) under Title II of the Social

Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security

Act. Dkt. 3. This matter has been fully briefed and, after reviewing the record in its entirety,

the Court **REVERSES** the Commissioner's final decision and **REMANDS** this case for further

administrative proceedings.

## II.     BACKGROUND

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

In July 2013, Mr. McBride filed applications for DIB and SSI alleging disability commencing on July 1, 2012. Tr. 9, 190-202. The applications were denied initially and upon reconsideration. Tr. 9, 67-102. A hearing was held before Administrative Law Judge (ALJ) Tom L. Morris on July 17, 2014. Tr. 9, 26-66. Mr. McBride was represented by counsel, Susan Holm. Tr. 9, 26. Thomas A. Polsin, a vocational expert, also testified at the hearing. *Id.* On August 21, 2014, ALJ Morris issued an unfavorable decision. Tr. 9-20. The Appeals Council denied review, and the ALJ's decision became final. Tr. 1-4. Mr. McBride then timely filed this judicial action. [2]

### III.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### IV.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.

---

[2] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V.     EVALUATING DISABILITY

As the claimant, Mr. McBride bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or is expected to last, for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. *Tackett*, at 1098-99. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, the inquiry ends without the need to consider subsequent steps. *Id.*; 20 C.F.R. §§ 404.1520, 416.920. Step one asks whether the claimant is presently engaged in "substantial gainful activity" (SGA). 20 C.F.R. §§ 404.1520(b), 416.920(b). [3] If he is, disability benefits are denied. *Id.* If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have such impairments, he is not disabled. *Id.* If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

---

[3] Substantial gainful employment is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R § 404.1572.

then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the claimant is unable to perform other work, then he is found disabled; if the opposite is true, he is disabled and benefits may be awarded. *Id.*

## VI.    THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[4] the ALJ found that:

**Step one:**  Mr. McBride has not engaged in substantial gainful activity since July 1, 2012, the alleged onset date.

**Step two:**  Mr. McBride has the following severe impairments: degenerative disc disease; osteoarthritis; and allied disorders.

**Step three:**  These impairments do not meet or equal the requirements of a listed impairment.[5]

**Residual Functional Capacity:**  Mr. McBride can perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). He can frequently climb ramps and stairs and frequently stoop. He can occasionally climb ladders, ropes and scaffolds and occasionally kneel, crouch, and crawl. He must avoid concentrated exposure to hazards and vibrations. He needs to periodically alternate sitting with standing which can be accomplished by any work task requiring such shifts or can be done in either position temporarily or longer. He will need one additional 10-minute break during the work day.

**Step four:**  Mr. McBride can perform past relevant work as a telephone solicitor and sales manager and, as such, is not disabled.

**Step five:**  Alternatively, as there are jobs that exist in significant numbers in the national economy that Mr. McBride can perform including hand packager, small parts assembler and cashier II, he is not disabled.

Tr. 9-20.

## VII.    ISSUES ON APPEAL

---

[4] 20 C.F.R. §§ 404.1520, 416.920.
[5] 20 C.F.R. Part 404, Subpart P. Appendix 1.

The parties agree this matter should be remanded, but disagree on the nature of the remand. Dkt. 10; Dkt. 14. Mr. McBride argues the ALJ harmfully erred at step two "in not considering [his] conditions aside from osteoarthritis and allied disorders as severe impairments", and in evaluating the treating opinion of David True, M.D., his own testimony and the lay witness statements. Dkt. 10 at 1. Mr. McBride contends this evidence should be credited as true and the matter should be remanded for an award of benefits or, alternatively, that the matter should be remanded to a different ALJ for further proceedings.[6] *Id.* The Commissioner concedes the ALJ erred in evaluating Mr. McBride's impairments at step two as well as the credibility of Mr. McBride's testimony and that, as a result of these errors, the ALJ's RFC assessment was unsupported. Dkt. 10 at 1. The Commissioner disagrees the ALJ erred in evaluating the treating opinion of Dr. True and the lay witness statements but also contends that because she concedes error in the RFC, "it is irrelevant whether the parties dispute the ALJ's evaluation of the lay witness and medical opinion evidence." Dkt. 14 at 2. The Commissioner argues this matter should be remanded for further proceedings. *Id.* As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## VIII. DISCUSSION

### A. Evaluating Severe Impairments at Step Two

At step two of the sequential evaluation, the Commissioner must determine "whether the claimant has a medically severe impairment or combination of impairments." *See Smolen v.*

---

[6] Mr. McBride offers no explanation or argument in support of his assertion that this matter should be remanded to a different ALJ. The Court will only review issues argued "specifically and distinctly" in a party's opening brief and Mr. McBride's "bare assertion of an issue" here is insufficient to preserve his claim. *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003). Accordingly, the Court declines to further address this argument.

*Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1520(a)(4)(ii).  The claimant has

the burden to show that (1) she has a medically determinable physical or mental impairment, and

(2) the medically determinable impairment is severe.  *See Bowen v. Yuckert*, 482 U.S. 137, 146

(1987).  A "'physical or mental impairment' is an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D); 20

C.F.R. § 404.1521.  Thus, a medically determinable impairment must be established by objective

medical evidence from an acceptable medical source.  20 C.F.R. § 404.1521.  An impairment or

combination of impairments is severe if it significantly limits the claimant's physical or mental

ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 404.1521(a).  "The step two

inquiry is a de minimus screening device to dispose of groundless claims."  *Id*.  An impairment

or combination of impairments may be found "'not severe' only if the evidence establishes a

slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"

*Smolen*, 80 F.3d at 1290 (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).  However,

the claimant has the burden of proving his "impairments or their symptoms affect [his] ability to

perform basic work activities."  *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).

The ALJ found degenerative disc disease, osteoarthritis, and allied disorders to be severe

impairments at step two.  Tr. 11.  The ALJ found "obesity, gastrointestinal complaints,

hyperglycemia, hypertension, sleep apnea, central nervous system apnea, hypogonadism, kidney

disease secondary to NSAID use, left shoulder pain and history of gout" to be non-severe

impairments on the grounds that "these impairments, considered singly or in combination, have

caused only transient and mild symptoms and limitations, are well controlled with treatment, did

not persist for twelve continuous months, do not have greater than a minimal limitation on the

claimant's physical or mental ability to perform basic work activities, or are otherwise not adequately supported by the medical evidence of record." Tr. 11-12.

Mr. McBride argues the ALJ erred in evaluating, or failing to evaluate, several of his impairments at step two. Dkt. 10 at 3. Specifically, Mr. McBride contends the ALJ erred in performing no evaluation of the evidence to determine whether chronic headaches, depression and anxiety were severe impairments. *Id.* Moreover, Mr. McBride argues, the ALJ "only made a cursory explanation" that his conditions diagnosed as chronic kidney disease, sleep apnea, and gout, were not severe impairments. *Id.* Mr. McBride argues that all of the above conditions resulted in more than minimal impairments to his ability to perform basic work activities and should therefore have been considered severe impairments. *Id.* The Commissioner concedes, generally, that the ALJ erred in evaluating Mr. McBride's impairments at step two and contends these impairments should be reevaluated on remand. Dkt. 14 at 1, 7.

The Court reviews the ALJ's decision for legal error and to determine whether it is supported by substantial evidence. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). However, the Court cannot review a finding that was not made or was not sufficiently specific to provide for meaningful review such as, in this case, whether the above reference impairments were severe. *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("If the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'"); *Mitchell-Bettine v. Astrue*, No. 12-5279, 2013 WL 549900 at *3 (W.D. Wash. Jan. 24, 2013) ("The Court may review an ALJ's decision for legal error and to determine if it is supported by substantial evidence, but cannot review a finding that was not made: namely, whether Plaintiff's

impairments are severe").  The ALJ made no determination at all with respect to the severity of some of the cited impairments and the Commissioner does not dispute Mr. McBride's contention that the "cursory" explanation for discounting the other impairments was insufficient.  These are determinations that should be made by the ALJ in the first instance, not the Court.  Moreover, as discussed below, some of the other evidence related to the impact of the cited impairments on Mr. McBride's ability to work (including Mr. McBride's testimony, the lay testimony and Dr. True's opinion) must also be reevaluated on remand.  Accordingly, on remand, the ALJ should reevaluate Mr. McBride's impairments, including chronic headaches, depression, anxiety, chronic kidney disease, sleep apnea, and gout, at step two.

### B.    Mr. McBride's Symptom Testimony

The parties also agree the ALJ harmfully erred in failing to give clear and convincing reasons for discounting the credibility of Mr. McBride's symptom testimony.  Dkts. 10 at 1, 14 at 1.  As discussed below, this matter must be remanded for further proceedings.  Accordingly, on remand, the ALJ should also reevaluate Mr. McBride's symptom testimony.

### C.    David True, M.D.

Mr. McBride contends the ALJ erred in discounting the treating opinion of Dr. True. Dkt. 10 at 1, 11-17.  The Commissioner generally disputes this assignment of error but raises no specific challenges to Mr. McBride's arguments.[7]  Dkt. 14 at 2.  The Court agrees with Mr. McBride that the ALJ erred in discounting Dr. True's opinion.

In general, more weight should be given to the opinion of a treating physician than to a

---

[7] The Commissioner contends this issue is irrelevant because she agrees the ALJ erred in determining the RFC and that the matter must be remanded.  Dkt. 14 at 2.  However, the fact that the Commissioner concedes the matter must be remanded does not moot Mr. McBride's claim of error with respect to Dr. True's opinion.  Rather, the Court must address this issue in order to properly fashion the scope of remand.

non-treating physician, and more weight to the opinion of an examining physician than to a nonexamining physician. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where a treating or examining doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Id.* Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons supported by substantial evidence in the record for so doing." *Id.* at 830-31. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Dr. True provided several opinions regarding Mr. McBride's functional capacity. Specifically, in June 2013, Dr. True opined that Mr. McBride was "permanently disabled due to chronic medical conditions including osteoarthritis and neuropathy that limit his ability to sit, stand, or walk for any period of time greater than 30 minutes." Tr. 313. In March 2014, Dr. True indicated that Mr. McBride was unable to walk more than 100 feet per day, unable to climb or descend stairs, unable to lift more than 3-5 pounds 3-4 times daily and [was] restricted to no more than 30-45 minutes per day of any one activity including standing, sitting, walking, working at a computer or speaking on the phone. Tr. 400. And in May 2014, Dr. True opined that Mr. McBride was unable to sit, stand or walk for over 30 minutes each in an 8-hour work day and that he could never lift up to 5 pounds and seldom carry up to 5 pounds. Tr. 401-403. Dr. True also indicated that Mr. McBride was developing increasing problems with mood

associated with depression that was causing anxiety and limitations in concentration and memory. *Id.*

The ALJ gave Dr. True's opinions little weight for several reasons. First, the ALJ indicated that the "extreme limitations [Dr. True] identifies are not consistent with the objective exam findings or the x-rays." Tr. 17. Specifically, the ALJ noted that "as to the lifting limitations, the evidence shows normal strength." *Id.* However, the evidence indicates that Mr. McBride's limitations are caused predominantly by pain, not by deficits in strength. Thus, the fact that Mr. McBride showed "normal strength" on some exams is not necessarily inconsistent with Dr. True's limitation that Mr. McBride could never lift up to 5 pounds and seldom carry up to 5 pounds. Tr. 401-403. Furthermore, substantial evidence does not support the ALJ's finding that Dr. True's opinion was inconsistent with the x-rays. Tr. 17. In fact, the x-rays contain significant findings including: severe tri-compartmental arthritis in the left knee, degenerative changes in the lumbar spine, degenerative changes and ossification of ligamentum nuchae posterior to the spinious process of C5 in the cervical spine, possible avulsion fracture fragments in region of superior left hip joint, possible avulsion fracture fragments medial to mid to proximal left femur. Tr. 303-304. Moreover, Dr. True did not find the x-ray results inconsistent with the opined limitations and the ALJ fails to explain why his own interpretation of the evidence, rather than Dr. True's, is correct. *See Reddick*, 157 F.3d at 725 (In discounting a treating physician's opinion, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Accordingly, these were not sufficient reasons to discount Dr. True's opinions.

Second, the ALJ also discounted Dr. True's May 2014 opinion that Mr. McBride could never lift up to five pound as inconsistent with his demonstrated activities. Tr. 17. Specifically,

the ALJ noted that, in July 2013, Mr. McBride acknowledged he was able to shop for items such as pet food, litter and groceries. *Id.* However, the ALJ did not inquire about the weight of these items, what specific actions were involved in "shopping" or whether Mr. McBride required assistance. Moreover, Dr. True's earlier opinion, in March 2014, is slightly less restrictive, indicating Mr. McBride was unable to lift more than 3-5 pounds 3-4 times daily. Tr. 400. This minor decrease in lifting ability is generally consistent with Dr. True's opinion that Mr. McBride's condition is progressive. Tr. 401. Thus, without more or further development, Mr. McBride's ability to shop for some items of undetermined weight in July 2013 does not necessarily undermine Dr. True's May 2014 opinion that he could never lift up to five pounds. *See, e.g. Durham v. Colvin*, No. 15-00567, 2015 WL 9305627 at * (C.D. Cal. Dec. 21, 2015) ("[p]laintiff's ability to shop, take care of personal needs, go out alone, and prepare simple meals does not necessarily involve, as the Commissioner seems to assume, lifting over five pounds.").

Third, the ALJ also discounted Dr. True's opinion that Mr. McBride's increasing anxiety and depression were causing limitations in concentration and memory. Tr. 17. Specifically, the ALJ noted there was little mention of issues associated with anxiety or concentration and memory issues. *Id.* However, Mr. McBride's anxiety and depression were observed, on several occasions, by Dr. True and his difficulties with concentration were also testified to by Mr. McBride and the lay witnesses. Tr. 51-52, 259, 273, 408, 425, 424, 430, 457. Accordingly, substantial evidence does not support this reason for discounting Dr. True's opinion. The ALJ also notes that Mr. McBride had been taking diazepam for chronic anxiety, which he found to be helpful. Tr. 17. However, it is unclear how this fact undermines Dr. True's opinion. Rather, the fact that Mr. McBride was taking diazapam would seem to support Dr. True's opinion that Mr. McBride was experiencing anxiety. The ALJ also noted that Dr. True did not recommend neuro-

psychological testing for Mr. McBride's alleged mental issues until he reported these issues in connection with his request that Dr. True complete his disability paperwork. Tr. 17. However, the mere fact that Mr. McBride may have brought up his mental health symptoms at an appointment where his disability application was also a subject does not, in and of itself, undermine Dr. True's opinion. There is no indication Dr. True found Mr. McBride's complaints not credible and, as noted above, the ALJ also erred in discounting the credibility of Mr. McBride's symptom testimony. Finally, the ALJ notes that on some occasions, after Dr. True's May 2014 opinion, he found Mr. McBride to have a normal mood and affect and that he was in no distress. Tr. 17. However, the record also indicates that on several occasions, both prior and subsequent to the May 2014 opinion, Mr. McBride was noted by Dr. True to appear anxious and depressed. Tr. 408 (patient is nervous/anxious), 429, (positive for self-injury, dysphoric mood and decreased concentration), 430 (exhibits a depressed mood), 457 (patient is nervous/anxious and appears distressed). Accordingly, substantial evidence also does not support this reason for discounting Dr. True's opinion.

In sum, the ALJ erred in discounting Dr. True's opinions. This error was harmful because Dr. True's opinions set forth greater limitations than were included in the ALJ's RFC. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' and … 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2015))). As discussed below, this matter must be remanded for further proceedings. Accordingly, on remand, the ALJ should reevaluate Dr. True's opinion.

Mr. McBride also argues the ALJ erred in giving less weight to Dr. True's treating opinions than to the examining opinion of Mark Magdaleno, M.D., that Mr. McBride could perform sedentary work, and the nonexamining opinion of State consultant Howard Platter, M.D., that Mr. McBride could perform light work with some additional limitations.  Tr. 89-92, 299.  However, the ALJ did not cite to the opinions of Dr. Magdaleno and Dr. Platter as a basis for giving Dr. True's opinion less weight and the Court will not speculate as to the validity or invalidity of findings the ALJ did not make.  *See Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").  However, as the ALJ improperly discounted Dr. True's opinions, in reevaluating those opinions on remand, to the extent necessary, the ALJ should also reevaluate and reweigh the opinions of Dr. Magdaleno and Dr. Platter.

### D.      Lay Witness Testimony

Mr. McBride also contends the ALJ harmfully erred in evaluating the lay witness statements of Kelli Hurli, John McBride and John Meikle.  Dkt. 10 at 9.  The Commissioner again generally disputes this assignment of error but raises no specific challenges to Mr. McBride's arguments.  This issue is also not mooted by the Commissioner's other concessions as it is relevant to the scope of remand.  The Court agrees with Mr. McBride that the ALJ erred in evaluating the lay witness statements.

In June 2014, Ms. Hurli, Mr. McBride's friend, submitted a statement indicating that she used to see Mr. McBride socially outside of their homes a couple times a month.  Tr. 259-260.  However, as Mr. McBride's health has deteriorated over the last three to four years, Ms. Hurli

indicated she has had to travel to his home in order to visit him because it is difficult for him to leave the house. *Id.* Ms. Hurli also indicated that whereas in the past Mr. McBride's had kept his house very clean, she has observed that, due to the deterioration of his condition, he has been unable to do so. *Id.* Ms. Hurli also indicated that Mr. McBride has had more difficulty comprehending her emails the last few years. *Id.* She also noted that things that are simple for most are physically difficult for Mr. McBride and that, as a result, he'll have to take part of the next day to rest so he feels better. *Id.*

In July 2014, John McBride, Mr. McBride's brother, submitted a statement indicating that he has watched Mr. McBride struggle with a multitude of progressive disabilities. Tr. 273. He indicated that "[m]ore recently it has become evident that as a result of [Mr. McBride's] physical limitations, [he] is no longer able to manage any kind of gainful employment." *Id.* Specifically, "[n]egotiating cars, stairs, sidewalks, doors, sitting for short or long periods, walking any distance, completing relatively simple, repetitive and routine task and even answering the phone are all major challenges that require planning and accommodation and recovery." *Id.* He further indicated that Mr. McBride cannot kneel, bend over or walk up a flight of stairs and that he has become more isolated and seems to be spiraling into a depressive state. *Id.*

Mr. McBride's former employer, John Meikle, also submitted a statement indicating that he had witnessed Mr. McBride's health challenges when he was employed as a telemarketer. Tr. 274. He indicated that Mr. McBride was habitually tardy and was forced to miss several days of work due to health issues. *Id.* As a result, Mr. Meikle indicated that he had arranged for Mr. McBride to work on a "'flex time' schedule that allowed him to work more when he was feeling better and less when he was not." *Id.* He further indicated that it was clear Mr. McBride was

"working hard to overcome his health challenges but was not feeling well enough to work regularly." *Id.*

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *See Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1527(f), 416.927(f). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence ... and therefore *cannot* be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.

Here, the ALJ rejected the lay witness statements on the grounds that they "are not consistent with the objective medical evidence." Tr. 17. Specifically, the ALJ indicated that,

> [w]hile exam findings show some limitation in range of motion, the claimant has normal strength and normal sensation. Further, the overall treating record shows that the claimant's pain has been adequately managed with medication. The mental limitations noted in these statements are also inconsistent with the evidence of record which does not show concerns regarding these issues until the claimant brings them up at an appointment concerning his disability application.

Tr. 17-18. None of these reasons is sufficient.

First, the ALJ fails to explain how normal findings with respect to strength and sensation undermine the lay witness testimony as to Mr. McBride's limitations. As the ALJ notes, Mr. McBride did have range of motion limitations and his own symptom testimony, which the ALJ improperly rejected, as well as that of the lay witnesses, indicates that his limitations are caused predominantly by pain not lack of strength or sensation. Thus, this was not a valid reason to discount the lay witness statements.

1    Second, the ALJ's finding that Mr. McBride's pain is "adequately managed" by

2    medication is also not a sufficient basis to reject the lay witness statements.  The ALJ does not

3    identify which records supposedly demonstrate Mr. McBride's pain is "adequately managed" by

4    this medication nor does he explain what he means by the term "adequately" in the context of

5    Mr. McBride's ability to function.  Tr. 17-18.  Moreover, even with Mr. McBride's ongoing

6    medication use, Dr. True's opinions, which the ALJ also improperly rejected, indicate that he is

7    limited to a substantially greater extent than is provided in the RFC.  Tr. 313, 400-403.

8    Accordingly, substantial evidence does not support this reason for discounting the lay witness

9    testimony.

10           Third, the mental impairments noted in the lay witness statements are not substantially

11   inconsistent with the medical evidence.  The mere fact that Mr. McBride may have brought up

12   his mental health symptoms at an appointment where his disability application was also a subject

13   does not undermine the lay witness statements which are based on personal observations.  This is

14   particularly true in light of the fact that the ALJ improperly discounted the credibility of Mr.

15   McBride's symptom testimony.   Moreover, there is evidence in the record indicating that, on

16   several occasions, Dr. True did observe Mr. McBride to be anxious and depressed.  Tr. 408

17   (patient is nervous/anxious), 429, (positive for self-injury, dysphoric mood and decreased

18   concentration), 430 (exhibits a depressed mood), 457 (patient is nervous/anxious and appears

19   distressed).  Accordingly, this was also not a valid reason to discount the lay witness statements.

20   The Court also notes that the mere fact that every aspect of the lay witness statements regarding

21   the level and impact of Mr. McBride's pain may not be fully supported by medical evidence in

22   the record is not a sufficient reason, without more, to reject those opinions.  *See Bruce v. Astrue*,

23   557 F.3d 1113, 1116 (9th Cir. 2009).  Finally, as noted above, the lay witness statements are

generally consistent the opinion of Dr. True, which the ALJ also erred in discounting and must be reevaluated on remand.

In sum, the ALJ erred in rejecting the lay witness statements. Because the lay witness statements indicate Mr. McBride is more limited than provided in the RFC, this error is not harmless. *See Marsh*, 792 F.3d at 1173. As discussed below, this matter must be remanded for further proceedings. On remand, the ALJ should reevaluate the lay witness statements.

## E.    Scope of Remand

Mr. McBride argues that the improperly rejected evidence discussed above should be credited as true and this matter should be remanded for an award of benefits. Dkt. 10. The Commissioner concedes the ALJ erred in rejecting some of the above evidence but contends that the record contains conflicting evidence and outstanding issues that must be resolved through further proceedings on remand. Dkt. 14 at 2-9.

In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). However, a remand for an immediate award of benefits is an "extreme remedy," and is appropriate "only in 'rare circumstances.'" *Brown–Hunter v. Colvin,* 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). In order for the Court to remand a case for an award of benefits three requirements must be met. First, the Court must conclude that "'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must conclude "'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" *Id.* In considering this second requirement the Court must evaluate whether there are

any "'outstanding issues'" that must be resolved before a disability determination can be made. *Id.* (quoting *Treichler*, 775 F.3d at 1105). Third, the Court must conclude that, "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Id.* (quoting *Garrison*, 759 F.3d at 1021); *see also Treichler*, 775 F.3d 1101 ("Third, if we conclude that no outstanding issues remain and further proceedings would not be useful, we ... [find] the relevant testimony credible as a matter of law, and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding [.]'") (citations omitted).

Even if these three requirements are met, the Court "retains 'flexibility'" in determining the appropriate remedy." *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison*, 759 F.3d at 1021). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 1990). The Court may also remand for further proceedings "'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison*, 759 F.3d at 1021). Moreover, if the record is "uncertain and ambiguous," or "where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1105.

As noted above, the ALJ erred in evaluating several of Mr. McBride's impairments at step two, and in rejecting Mr. McBride's testimony, Dr. True's opinion and the lay witness statements. However, the record also contains conflicting evidence from other medical experts. Specifically, conflicting evidence exists in the examining opinion of Dr. Magdaleno, indicating Mr. McBride could perform sedentary work, and the State consulting opinion of Dr. Platter, indicating Mr. McBride could perform light work with some additional limitations. Tr. 89-92,

299.  Mr. McBride argues that the Court should give greater weight to Dr. True's treating opinion than to Dr. Madgaleno's examining opinion and Dr. Platter's nonexamining opinion. Dkt. 10 at 13-15.  However, it is the ALJ, not the Court, who "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see Brown-Hunter*, 806 F.3d at 492 ("Ever mindful of our duty not to substitute our own discretion for that of the agency, we have emphasized that 'the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court.'" (quoting *Marsh,* 792 F.3d at 1173)).  Here, as there is conflicting medical evidence in the record, this is not a case where there are "no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the [improperly rejected evidence] … were credited."  *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988).  Because the record does not "compel a finding of disability", remand for further proceedings, not payment of benefits, is warranted.  *Treichler*, 775 F.3d at 1099.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate: (1) Mr. McBride's impairments at step two; (2) Mr. McBride's symptom testimony; (3) Dr. True's opinion; (4) the lay witness statements; and, (5) proceed in evaluating steps three, four and five with the assistance of a vocational expert as necessary.

DATED this 11th day of May 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE